# BRYANT *v.* THE DISTRICT OF COLUMBIA DENTAL SOCIETY.

CORPORATIONS; BY-LAWS; AMOTION.

1. There is no question as to the right of a corporation organized for the advancement of the dental profession and the promotion of social intercourse and kindly feeling among its members, to make by-laws, even in the absence of express statutory authority, and to exercise the power of amotion. (Following *United States ex rel. De Yturbide* v. *Metropolitan Club*, 11 App. D. C. 180.)

2. Whether or not a member of a corporation organized for the promotion of social intercourse and kindly feeling among its members has violated a by-law providing for expulsion for "unprofessional conduct," is a question to be determined by the corporation; and the courts cannot sit as appellate tribunals to review the judgments of the corporate authorities, unless their authority be transcended, or fraud or bad faith be shown. (Following *United States ex rel. De Yturbide* v. *Metropolitan Club, supra.*)

3. Where the by-laws of an incorporated society provide that, if charges be made against a member, such charges shall be referred to a committee, who shall investigate and report at a regular meeting; and that, if such charges have been sustained, the member may be expelled by a two-thirds vote of the society, provided he has had an opportunity for defense,—the action of the society in expelling a member will not be interfered with by the court, where it appears that this procedure has

been duly followed; and it is not essential that the evidence on which the charges are based shall have been submitted to the whole society.

No. 1609. Submitted December 8, 1905. Decided January 4, 1906.

HEARING on an appeal by the petitioner from an order of the Supreme Court of the District of Columbia dismissing his petition for the writ of mandamus. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Irving Williamson* and *Mr. William G. Johnson* for the appellant.

*Mr. Conrad H. Syme* and *Mr. Charles A. Douglass* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

Appellant, Emory A. Bryant, applied for a mandamus to compel the District of Columbia Dental Society to restore him to his membership therein. To his petition the society filed an answer, which was demurred to. The demurrer was overruled, with leave to appellant to plead over; but he elected to stand upon his demurrer. Thereupon an order was made dismissing the petition for the writ, and from that order this appeal was taken.

The record shows that appellant was a practitioner of dentistry in the District of Columbia, and a member of the District of Columbia Dental Society. At a stated meeting of the society held on April 19, 1904, and attended by appellant, he was expelled by a vote of thirty-nine to fifteen. The by-laws of the society gave it authority to expel a member. Section 1 of article 3, relating thereto, is as follows: "Any act of special immorality or unprofessional conduct alleged to have been committed by a member shall be referred to a special committee of three, who shall examine into the case and report at the next regular meeting. Whereupon, if the charge has been sustained, the offending member may, by a vote of two thirds, be repri-

manded or expelled, provided the accused shall have an oppor-
tunity for defense before final action is taken on his case."

The facts, circumstances, and incidents leading up to the ex-
pulsion, generally stated, are these:

The District of Columbia Dental Society was incorporated
under the District laws with the object, as stated in its certifi-
cate of incorporation, for "the advancement of the dental pro-
fession and the promotion of social intercourse and kindly feel-
ing among its members." It seems that Congress, in 1892, pro-
vided by statute (27 Stat. at L. 42, 43, chap. 89) for a Board of
Dental Examiners to be appointed by the District Commission-
ers. The board was given power to license dentists to practise
in the District. By an amendment to the original act the con-
ditions upon which a license could be granted by the board to
dentists coming from other localities were altered. These con-
ditions apparently did not suit the views of the Board of Dental
Examiners. They sent out a circular letter suggesting to the
boards of the various States and Territories that they certify
more than the act of Congress required in order to admit dentists
to practise in the District of Columbia without undergoing an
examination. This action of the board did not meet the ap-
proval of the appellant, who addressed a letter to the Commis-
sioners of the District of Columbia objecting to the circular
letter and stating in part:

Now, Mr. Commissioners, I object to the circular, first, as
the one who drafted the law; second, as the one through whose
efforts it was passed; third, for the fact that it is a misstatement
of facts; fourth, that it discredits a law these men are there to
enforce; fifth, that its effect, if left alone, would be to nullify
the attempt to get national interchange of dental licenses, by
means of having the same law in every State and Territory in
the Union; sixth, that the action of this board is unprecedented,
unethical, unprofessional, false to its office and the profession
it represents and the oath they took when they accepted their
offices.

I suggest, Mr. Commissioners, that your honorable body

direct the Board of Dental Examiners of the District of Columbia to withdraw this circular at once by due notice to those to whom they have sent the same, and issue a new circular, based upon facts, truth, and honesty.

Very respectfully submitted,

Emory A. Bryant.

The members of the Board of Dental Examiners were not only officials of the District, but were Dr. Bryant's fellow members of the dental society.

It further appears that legislation of interest to the dental profession was pending in Congress, and that the members of the District society had different views upon such legislation. The appellant did not hesitate to state his position and criticise his fellow members in terms more forcible than polite. He sent letters to various parties, among others to the president of the National Dental Association, in one of which, referring to his fellow members of the District society and their course relative to the proposed legislation, he wrote:

Of all the damn fool moves I ever saw, this latest takes the cake. I hope they will be able to get their bill, and then I know one man who will not be *the man.* The local disturbing conditions is now transferred from the local to the national body, and if there is such a thing as justice in the national asso., it will be short and sweet. If personal animosities are to be the backbone of legislation for the profession, the quicker the thing is known, the better it will be for all hands.

There is no one on earth that deplores the personal fight here more than I do, but I am the last one on earth to stop fighting the filth that has control in this locality. Like my friend, Senator Tillman, "When I have to handle manure, I do it with a pitchfork." I do not mind them fighting me personally so long as this does not injure anyone but myself, but when it comes to using my profession as a mop to swipe me with at the sacrifice of my profession or my friends, that is another matter.

I had intended to drop the matter when they had succeeded

in getting their bill indorsed by the Southern branch in the first instance, but when they came back a second time, and the matter became by their own doing, that is where I change my tactics and trouble begins.    I once before told them "if it was politics they wanted, I would give them all they wanted and a damn sight more before I was through with them," and I kept my word.    I just give you the tip, "there will be hell to pay" before this thing ends.    I am not engaged in fighting men, but I am out for "beans" on their principles and motives.    "The black flag is up, and I have nailed her to the top mast."    No quarter will be asked, or will it be given.    A fair field and no favors, is all I ask.    I will sign my name in full to anything I say or do.    I am not under cover, but out in the open.

Sincerely and fraternally yours,

Emory A. Bryant.


The writing of these letters was followed by the preferring of charges against appellant by members of the society.    The first of these is as follows:


Washington, D. C., March 15, 1904.

We, the undersigned, do hereby charge Dr. Emory A. Bryant, a member of this society, with the following acts of unprofessional and unethical conduct:

1st. Under date of March 10, 1904, he wrote the Commissioners of the District of Columbia, charging the board of examiners, every member of which is a member of this society, with unprofessional and unethical conduct, false to the oath taken by them and to the profession they represent, and insinuates that they have issued a circular letter at variance with truth and honesty.

2d. That he interfered with the work of a regular committee appointed by this society on legislation.

3d. That in the evening of February 19th, at an adjourned meeting of this society, he said that the members of this society were too small cattle for him to deal with, and before taking his seat characterized the members as being a lot of cats.

4th. That he has been a disturbing element in this society for the past twelve months.

(Signed)                 .         Jno. H. London,
                                   C. W. Appler,
                                   M. E. Finley,
                                   W. E. Dieffenderfer.


A certified copy of the letter to the District Commissioners was filed with the charges. A portion of this letter we have quoted.

The second charges read:

It is hereby alleged that the accompanying letters, written and signed by Dr. Emory A. Bryant, a member of this society, evidence unprofessional conduct on the part of the said Bryant in this,—that the said letters are, (a) false in a number of material statements; (b) that they are vicious in tone; (c) that they disclose a mischievous and unnaturally antagonistic and evil purpose; (d) that they contain threats to carry on a contention by him, the said Bryant, which is discreditable to the dental profession, dishonoring to the Nat. D. Asso., and degrading to this society, and which contention, if further pursued in the spirit and manner adopted by the said Bryant, is calculated to embarrass, discredit, and defeat express worthy objects of the profession.

In connection with this alleged unprofessional conduct of Dr. Emory Bryant, your attention is invited to the first ten lines of article 3, section 1, of your by-laws.

(Signed)                            M. F. Finley,
                                   Wms. Donnally,
                                   D. N. Rust,
                                   H. M. Schooley.


Accompanying these charges was the letter, among others, written to the president of the national association, from which we have quoted.

Upon receipt of these charges the president appointed a

special committee of three, in accordance with the terms of the by-laws, to examine into the case and report its findings at the next regular meeting of the society. The appellant objected to two of the members named, with the result that the president substituted two others in their places, to whom appellant made no objection. The charges were then read to the society and referred to the committee for consideration and report.

The answer sets out the further steps that were taken, and, in view of the demurrer, they must, so far as they state facts, be taken as proved. It is recited that, after the committee was appointed, "that, thereupon, the charges hereinbefore set forth having been read by the secretary of said society, they were by the president referred to said committee for consideration and report; that thereafter and before the next regular meeting, which was set for April 19, 1904, the said committee met and determined upon the method of procedure to investigate said charges, which required that all allegations made in support thereof should be submitted in writing, that the petitioner should have a full and complete copy of the charges and specifications, and of all allegations in support thereof, and should be given ample opportunity to meet the same by counter-statements, and by such statements as he, himself, desired to make; that petitioner raised no objection whatever to said mode of procedure, and did not demand the right to have witnesses sworn or cross-examined, or to rule out testimony taken, but in all things acquiesced in the method of trial adopted by said committee; that copies of the charges and specifications, and of all statements made in support thereof, were furnished to the petitioner, and that he replied to the same in writing, submitting two voluminous statements and many documents in defense to said charges; that petitioner admitted the authorship of the letters hereinbefore referred to, and set forth as exhibits; that petitioner, having been given full and ample opportunity to make his defense, and having availed himself of the same, and having entered no objection to the method and mode of investigation pursued by the committee, the committee thereupon proceeded to consider said charges separately and took a separate

ballot as to each charge, which said balloting resulted after the consideration of the evidence taken in support or defense of each charge, in the committee unanimously finding every charge made sustained, with the single exception of charge designated as charge 4. That on the 19th day of April, 1904, at the next stated meeting of the defendant corporation, at which the petitioner was present, and in which he participated, the aforesaid committee made its report, its chairman having first read in open meeting the charges which had been preferred against the petitioner as aforesaid, the report of said committee,—as follows, to wit:

"We, your committee appointed to investigate the charges and allegations preferred against Dr. Emory A. Bryant, an active member of this society, beg leave to report that we have carefully considered the charges and allegations, and the answers thereto, and, after due consideration, submit the following as our finding, to wit:

"In regard to the charges preferred by Drs. London, Appler, Finley, and Donnally, charges 1, 2, and 3 are sustained; charge 4 is not sustained.

"In regard to the allegations signed by Drs. Finley, Donnally, Rust, and Schooley, we find that allegations marked a, b, c, and d are all sustained."

It is charged as error that the court should not have dismissed appellant's petition, but should have granted the peremptory writ of mandamus, and sustained the demurrer for the following reasons:

"(a) Because the acts alleged against him were not within the provisions of the by-laws.

"(b) Because the alleged evidence of violation of the by-laws was not submitted to his triers, the society."

Referring to the first ground, we consider that the rule laid down in *United States ex rel. De Yturbide* v. *Metropolitan Club,* 11 D. C. App. 180, is controlling in this case. It is there said: "There is no longer any question of the right of a corporation, such as the respondent in this case, to make by-laws, even in the

absence of express statutory power, and to exercise the power of a motion, as incident to the corporation."

The ground upon which the expulsion of appellant was predicated was the violation of a by-law made for the good government of the club, and, as this court said in the *De Yturbide Case,* it "being an act against his duty to the corporation, the respondent not only had the legal power to adjudge what constituted conduct unbecoming a gentleman, but it was the only tribunal which could exercise such a power."

In the present case the charges were based upon a violation of the by-law providing for expulsion of a member for "unprofessional conduct." That one set of charges stated that the acts were "unprofessional and unethical" does not, as we look at it, take the charge outside the by-law. The question the society was called upon to determine was as to the acts charged being "unprofessional." The appellant would have an unprofessional act, as that term is used in the by-law, defined in its strictest sense. We think in this he is incorrect. The society is a semi-social organization. One of its objects is to promote social intercourse and kindly feeling among its members. The letters written by appellant characterizing the acts of his fellow members did not tend to promote the objects aimed at by the society. In them we find a definition of what he himself considered an "unprofessional" act. In his letter to the District Commissioners he charged that his fellow members composing the Board of Dental Examiners had been guilty of "unprofessional" acts in sending out the circular to which we have referred. That letter, compared with the letters written by him, is most inoffensive. But to charge, without justification, an act of his fellow members, though that act was done in an official capacity, as "unprofessional, false to its office and the profession it represents and the oath they took when they accepted their offices," is at least sufficient to warrant us in refusing to hold that the society, in treating such charges as warranting the expulsion of a member of the society for an unprofessional act, has exceeded its power or been guilty of fraud or bad faith. The language used by this court in *United States*

*ex rel. De Yturbide* v. *Metropolitan Club, supra,* is directly in
point.

"Whether the conduct of the relator in accusing the lady, a
daughter of a member of the club, within the club, to members
thereof, of writing anonymous letters, was such as made it un-
becoming a gentleman within the meaning of the by-law, was a
question, as we have seen upon the authorities already cited,
that could only be determined by the corporate authorities; and
that it is only where it is made clearly to appear that such de-
termination was *ultra vires,* or made contrary to good faith, that
the courts can interfere.   The courts cannot sit as appellate
tribunals to review the judgments of the corporate authorities in
such cases.   The parties concerned, having constituted their
own domestic tribunal for the trial and determination of ques-
tions of alleged violation of purely corporate duty, they must
abide such determination, unless the authority be transcended,
or there be fraud or bad faith shown."

2. A more serious and difficult question is whether the appel-
lant was accorded the trial provided by the by-law.   We have
shown that the proper committee was regularly appointed, and
that its personnel was satisfactory to appellant.   The regularity
of the hearing before that committee is not questioned, and it
is not claimed that appellant was not accorded every oppor-
tunity to present his defense before the committee.   Upon the
coming in of the committee, which reported all but one of the
charges proved, it was moved and seconded that the appellant
be expelled.   A motion was also made and seconded that all of
the evidence in the case be submitted.   That motion was de-
feated.   It would appear as though its production was not
very strongly insisted upon, for the record is silent as to how
the vote was taken, or whether any members other than the
mover and seconder of the motion were in favor of it.   To legal
tribunals accustomed to hear and decide cases on evidence duly
presented it seems improper in the highest degree to refuse to
listen to the evidence.   It must be remembered, however, that
the members of the society are laymen, and not accustomed to
legal proceedings.   When appellant asked for fifteen minutes in

which to make a statement or defense he was accorded double the time he asked. He made no attempt to get the evidence before the society, but largely occupied the time in personal attacks upon his fellow members. Furthermore, the charges were mainly based upon letters admittedly written by appellant. It is not a violent presumption to assume that the members were familiar with the letters and did not care to consider them further. His tongue seemingly was as ready as his pen, and his employment of the half hour accorded him was doubtless greater than that of his fellow members. He had taken the sword in his hand, and he knew that he was to perish by the sword. Forms did not trouble him. His was a lost cause, and he knew full well that no rehearing of the evidence would avail, and he evidently preferred what might be termed a heart-to-heart talk rather than to employ his time in stating his defense and how it had been made out before the committee. The learned justice before whom the case was tried, in his opinion, correctly interprets the by-law under which the expulsion proceedings were had. He says "that when the charges have been preferred in proper manner against a member of the society, they shall be referred to a special committee of three, who shall examine into the case and report at the next regular meeting. Now, that was done in this case. There is no question about it, as I understand or remember as to the sufficiency of the specifications of misconduct, and, so far as the matter of form went, they were referred to the committee of three, who did examine and who did report. 'Whereupon,' the by-law proceeds, 'if the charge has been sustained, the offending member may, by a vote of two thirds, be reprimanded or expelled.'

"Now, I do not believe that that includes the rehearing by the whole society, that it is simply, as the language indicates, a report made by the committee to the society, upon which the society acts either affirmatively or negatively,—either accepts it or rejects it,—and a member of that society, in determining his conclusions as to that report, would have the right to call for the testimony upon which the committee based its report, or would have the right to question the accuracy of the report; but that is

a right which is for the members of the society before they vote upon the report. This man, the doctor, had had his hearing, had his notice, and an opportunity to be heard by the committee, and an opportunity to be heard in his defense before the association. But I do not read this as meaning that the association shall rehear the evidence upon which the committee's report was based. They have the right, as any legislative body has, to act upon the report of the committee which has been appointed according to the rules of the order,—the society,—and they can act with or without information. They can vote blindly, if they please, for it, or they can insist on further information; but it is for them to say whether they will accept or reject the report."

We think nothing further need be said. The *De Yturbide Case* is controlling, and it is supported by the weight of authority.

It follows that the demurrer to the answer was properly overruled, and, therefore, the order of the court below denying the prayer for the writ of peremptory mandamus and dismissing the petition must be *affirmed, with costs, and it is so ordered.*